I'd like to thank Judge Richard Turns, a very distinguished judge from the District Court of Massachusetts, who it's my good fortune and pleasure to have just met briefly. Unfortunately, we had to cut off our conversation to do what they pay us for, but we'll continue the conversation. I want to thank you very much for joining us. And as I said earlier, and I'll say again, hopefully we'll see a lot more of you in the years to come. I'm also my understanding that there's a group of students, a class of students from Widener Law School in the courtroom with Judge Smith watching. Dick Dickinson, Judge McKee. Oh, Dickinson. Very bad mistake. Okay. Sorry about that. From Dickinson Law School. And I want to welcome Read your email, Judge McKee. Pardon me? Read your email. Okay. I'll read it very quickly. And I want to welcome them and hopefully we won't say or do anything today to dissuade them from the choice they've made to pursue a career in law. First case is Montanez versus Beard and Hale versus Beard. May it please the court. My name is Jerome Kalina and I represent the appellants Timothy Hale and Domingo Colon Montanez. And I've asked to reserve three minutes for rebuttal. Okay. I'm sorry, how many? Three minutes. Okay. Your Honors, the issue before the court today is whether Mr. Hale and Mr. Montanez's due process rights were violated when the Department of Corrections deducted funds from their inmate accounts pursuant to a DOC policy DC-ADM-005. I've got several questions. Every time I look at this, more questions pop up. What on the face of it appears to be a deceptively easy case? There's an administrative policy in place that mandates a 20% deduction from the inmate's account. I guess as long as the inmate has a balance of $10 or more, he or she has 20% a month debited from the account pursuant to a court order for recidivation costs and fines. Is that basically the way it works? Basically, Your Honor. It's 20% of both the amount in the account itself and income that comes in. Okay. But there's a statute in place which was decided and which was discussed in the Pennsylvania Supreme Court case in Buck which says, and as I read that statute and as I read Buck, the sentencing court should make a determination as to the inmate's eligibility, capability of paying, and set up some method of paying. But yet the policy seems to preclude the court setting up any kind of methodology for payment because it's already in place by the 20% deduction. Am I missing something here? Well, it seems to me that there's some vagueness in the statute here, Your Honor, in that Act 84, what Act 84, which is the statute, which is 42 PA consolidated statutes 9728, what it allows the DOC to do and actually instructs the DOC to do is formulate this policy. But on the other hand, you're correct that generally the sentencing court has the power to specify the manner and the method that the payment is supposed to occur. Following on that point, isn't – I mean, we can all manage – judges are very good at thinking of better ways to manage prisons. Putting aside that temptation, going directly to the due process issue, no doubt that your clients are entitled to a pre-deprivation hearing. For constitutional purposes, when does the deprivation occur? Does it occur at sentencing in the court or does it occur when the deduction takes place from the inmate's account? That seems critical to me. I would say, Your Honor, that the deduction in this case takes place when the accounts are debit, when the deductions are made from the accounts. There is a sentencing order out there and there's a certain amount of restitution costs and fines that the appellants here are going to be required to pay. But the deprivation itself did not occur until the DOC deducted funds directly from those accounts. Why isn't the sentencing hearing sufficient to give you the due process that you're asking for? There's already notice because the regulation is in place and the statute is in place prior even to the time of the sentencing hearing. The defendant goes in, whether or not the judge – and apparently there's some ambiguity on how it operates, and it varies from judge to judge apparently – but whether or not the judge lays out in specific dollar and cents amounts, the inmate or the defendant at that point knows that his or her account is going to be debited. Isn't that an opportunity there to say something to the judge to present his or her case as to whether or not there should be any deduction? If there's going to be a hardship because of the deduction, the defendant has an opportunity to tell the court at that time, why isn't that enough? Well, Your Honor, in this case, the appellants have alleged that there was no mention of how these deductions were going to be made at all under Act 84. In the case of Mr. Martinez, he's alleged that, in fact, his sentencing court said that the manner and method of the deductions would be subject to the program of the Pennsylvania Board of Parole, indicating that the deductions would occur afterwards. Well, that's not really a problem with Act 84. It's a problem with the individual sentencing procedures in these cases. But the regime that Act 84 envisions, how is that unconstitutional? Because it seems to allow for, indeed require, according to the Pennsylvania Supreme Court's interpretation of it, an opportunity on the part of the defendant to make a case about the amount of money that's going to be debited from the inmate's account. And then the inmate specifically knows, even that aside, specifically knows in advance how much is going to be debited. Maybe not the dollar amount, but the inmate knows what percentage of the account is going to be debited beforehand. Why isn't that enough? Well, Act 84 doesn't set the percentage. No, that's the extension. Yeah, it's the internal policy of the DOC, this DC-ADM-005. The Act 84 simply says that the DOC has the ability and, in fact, has the duty to the inmate certainly of the procedure itself. Shouldn't that be the obligation of the inmate's counsel at sentencing? Certainly we're not going to impose an obligation on judges to explain the intricacies of how inmate accounts are going to be handled if a prison sentence is being served. But if we have to put an obligation somewhere, it seems to me it either falls to the DOC. What I find missing in the record is any indication that an inmate is apprised of either the way the regulation is going to operate or what his recourse might be through a grievance procedure. But again, if we go back to the constitutional point where I think the deprivation occurs, couldn't we just simply say that's part of a lawyer's obligation to the client to explain what the constitution or what the consequences of a restitution order or a fine are going to be? I don't think that's true in this case, Your Honor. As I mentioned before ---- Mr. Kalina, Judge Smith, may I interrupt there because a follow-up question I think has some relevancy to Judge Stern's inquiry. When did this policy go into effect and when were these two plaintiffs sentenced? Act 84 was passed, I believe, in 1998. And the policy was certainly in effect before these inmates were sentenced. I'm blanking on the exact year that the D.C. ADM-005. It was? Pardon? The copy in the record, the copy in the appendix shows an effective date of April 7, 2004, which would have been after the sentencing of both of these plaintiffs. I believe that might be an amendment, Your Honor. And I will have to confess a little ignorance as to the exact date when the initial D.C. ADM-005 policy was put into place. The policy on the record was what was attached to the pleadings below. Well, does the record tell us anything about what the DOC does? I've been sentenced. I'm an inmate. I arrive at the designated institution. I assume I get a handbook. Is there anything in the record that tells me whether I'm told what's going to happen to my I don't believe there's anything in the record on that, Your Honor. I do understand that it's general policy that handbooks are given to, of the policies, are given to inmates when they are incarcerated. However, at that point, the sentencing is passed and the time for appeal, for example, the sentencing is already running. By the time that deduction takes place, I know defendants argue that they have the opportunity to appeal their sentencing. By the time that deduction takes place and by the time they get these policies, it's already too late. But you said earlier that the deprivation here occurs with the deduction. That's correct. I would imagine the deduction wouldn't occur until after the inmate gets to the institution. Right, right, right. I was going towards the point. You're correct, Your Honor. I was arguing the point that defendants argue that it's the sentencing that's the actual deduction. Mr. Kalina. Go ahead, Judge Smith. Mr. Kalina, may I take you back to first things, and that is simply what is property interest that is at stake here constitutionally? The property interest that's at stake, Your Honor, are the funds in their account. This Court has recognized in the Higgins case that inmates do have a constitutional property interest, constitutionally protected property interest in their funds. To what? Pardon? To what? To the inmate account? Not the inmate account, but to the funds in those accounts, Your Honor. Maybe I'm not understanding your question. No, property interest, I think absolutely you're right. The inmate does have a property interest in the account, but it's not an interest that is superior to the order of restitution. Is it a refine imposed by the court? I mean, it's not in the sense that they're going to have to pay the order of restitution, that their property interest is not going to trump that. However, the issue here is the deduction and the manner and method of payment of that restitution, which wasn't set by the court here. In fact, in the Montanez case, the court indicated an entirely different manner of payment. Well, you say in your brief that you're not arguing that there should be a hearing every time a deduction is taken, which would be an administrative impossibility. So what is it that you're imagining? You're imagining inmate arrives at the prison, the first deduction is about to occur, and then what happens? In that scenario, Your Honor, I would imagine that some notice has to be given to the inmate, that we are going to deduct your account, we've received this order for sentencing, and an opportunity to challenge that on whatever basis. It is, for example, in the Montanez case that my judge, my sentencing judge said that this was supposed to be paid on parole, and the ability to challenge that beforehand. Why isn't the prison grievance procedure a sufficient ability to challenge? Well, it goes back to, I think, what was said in the Higgins case, Your Honor, which is that pre-deprivation notice in process is generally required absent an extraordinary circumstance. And there is no extraordinary circumstance here. Can we tell that on the record before us? This comes to us from a dismissal pursuant to a 12B6 motion. Yeah, it is from a 12B6 dismissal, Your Honor. Also, do we need a better record to determine the extraordinary nature that would give rise to a determination that this can be all shifted into the post-deprivation phase? I think we do need a better record, Your Honor. I think that a number of the conclusions and determinations that the district court came to below did not take as true or give proper weight to the allegations that we're hearing. And there was no evidence as to, for example, the burden of pre-deprivation process. And I would point, Your Honor, as I see my time is running out, a case, it was Luis B versus Colawade 606F2-392, 3rd Circuit of 1979, where the court, in fact, held, reversed the dismissal because a further factual record had to be developed to conduct a Matthews analysis. That might be the best way to go here. We can get you on rebuttal. But if, hypothetically speaking, the inmate was simply to receive, I don't know how the inmates are contracted. I assume it's some kind of a note given to some, I don't know if it's a mailbox or in their cell. However, the administration communicates with the inmates. If the inmates were given a notice saying that it's been determined pursuant to your sentence and order that X amount of dollars is going to be deducted, X percentage of money will be deducted from your account starting on a certain date, period, why wouldn't that be enough? And if you want to challenge this, they have the inmate handbook with the grievance procedure, and they can then challenge that in the grievance procedure. Why wouldn't that be enough? And if it's not enough, then what's it going to look like? Well, I think that that might be enough. I think we need to look at the facts here. And, again, we're only at the complaint stage. And, again, they have to be given notice and a meaningful opportunity to challenge that. And if that procedure were to satisfy that, that could be enough. Unless there's other questions, I'll come back on rebuttal. Thank you. Thank you, Richard. Mr. Hopkirk. May it please the Court, my name is Howard Hopkirk. I'm a senior deputy attorney general from the Pennsylvania Office of Attorney General, and I represent Secretary Beard and the other appellees in this matter. In Buck v. Beard, the Pennsylvania Supreme Court held that an inmate who has funds deducted from his prison account under Act 84 receives sufficient due process protections through the criminal sentencing court. The decision of the Supreme Court was correct and should be followed by this Court. It's our position, we're not disputing that inmates have a property interest in their accounts, in their prison accounts, and we are not disputing that they are entitled to pre-deprivation due process. And we also, it's our position that the deprivation occurs when the money is actually taken out. Mr. Hopkirk. I'm sorry. Mr. Hopkirk, query. Were there even, were the inmate accounts even in existence at the time sentence was imposed? No, this isn't in the record, but you're not going to have an inmate account until you're actually in the custody. Unless you're already a prisoner in prison for some other offense. That's correct, Your Honor. So how can there be then any opportunity for pre-deprivation if at the time, to follow your line, which is that all the process that was due was afforded at the time of sentencing, and if the property interest is in the prisoner account, and if the prisoner account did not exist at that time, how can there be pre-deprivation process afforded at the time of sentencing? Your Honor, the sentencing court is supposed to take into consideration the financial state of the defendant in the criminal matter. He uses that to come up with restitution costs and fines. That is a separate figure which is independent of the inmate account. If the person was independently well- It goes to the amount, right? It goes to the amount of the fine, it goes to cost, it goes to the amount of restitution, and it takes into account general ability to pay. But I understand the plaintiffs here to be making a due process challenge as to the source of payment, not the amount. Well, the Supreme Court in Buck, they decided, they determined that Act 84 was a change in the law which required the Department of Corrections to take money out of prisoners' accounts to pay for the costs, restitution, et cetera. They also found that the prior practice where you would have a default hearing for all defendants was impractical and did not work. And so they decided, they read Act 84 as changing the law so that if and when an inmate had money in an inmate account, that money could be attached and that it would be done pursuant to procedures of the Department of Corrections. The procedures which were set up, in fact, helped protect a minimum level of money for an inmate in prison. Mr. President, if I could just round out Judge Smith's thought. Is the deprivation being put under a prospective order of restitution that will eventually encompass an inmate account, or is it, as Judge Smith is suggesting, the actual removal of funds from the account once it's established? Again, I'm the guy from out of town, but under Pennsylvania law, what would happen if an ordinary defendant is convicted, there's an order of restitution, and a year later he wins the Pennsylvania state lottery? Is there a procedure in place under Pennsylvania law to attach this creation of wealth? And if so, is there a process that the state has to follow in seizing those funds? The party in interest as far as collecting these costs and fines and restitution is the county probation office and the county courts. Any money that the Department of Correction collects, they do not take for themselves. They forward to the appropriate county where the person is sentenced.  Excuse me? But the prosecutions are all done at the county level, and so that's where the money under the statute goes back to. And just to clear up, I really think this is a broad, you're looking at whether the procedure as to all people under the system, whether it meets due process standards, not whether each of these particular defendants, whether there was a mistake or not. However, I want to clear up, if you look in the appendix, part of the trial transcript, it talks about, for Mr. Montanez, that when he's later, when he's on parole, that an appropriate payment plan would be put in place. That is only foreseeing the fact that he could eventually be released from prison and still not have paid off his fines. I agree. I think it was clear what the judge intended in making that comment. But I'm still interested in this question, whether restitution law in Pennsylvania reaches after acquired assets. For crime victims, it would cover any assets except things which are protected under federal law. Exactly. But let's assume, my example, I reach, I win the lottery, and now the victim is looking for restitution. Is there anything the state has to do in terms of a hearing before I can be forced to forfeit after acquired assets? A judgment in the particular county can be entered by the prothonotary, but this doesn't have anything to do with the Department of Corrections. And then they could levy assets, the county could, just like any other judgment. So why doesn't the order of restitution to the inmate have the same force as an ordinary judgment? Why doesn't it run to an after acquired inmate account? You want to say, yes, it does, I think. Well, I thought it did. Yeah, I mean, it does. It's just that there's a recognition by the legislature that the Department of Corrections needs to operate the prisons. And if you deprive prisoners of all money altogether and just said, we're going to take everything, that it doesn't serve peniological goals and that there's some reason to allow prisoners to have some money in inmate accounts. I don't think there's any constitutional right to have an inmate account at all. Interesting point. But do you agree that there's nothing in the record that tells us what a prisoner is or is not told about how this process is going to work once he arrives at the institution? There's nothing in the record. What I would say is that would be something that the criminal attorney should have advised them of. The statute is there. In the statute it says that the DOC will be setting up a procedure. I think you can tell from the Buck case, and maybe there are other cases that go back farther, but that in the Buck case it's clear since that was filed in 2002 that this procedure was in place. Mr. Hopkirk, to restate what I know is clear, your position has been that the sentencing proceeding in and of itself provided to the plaintiffs here all the process that was due. But we don't know in the face of this record whether Act 84 was ever even discussed at sentencing, do we? No, Your Honor, we don't. But that would be something that if a mistake was made, if that was something that was necessary, then you have to go back to the criminal trial court through the criminal appeals process to have that rectified. It's just like if an inmate is sentenced to eight years in prison and then there's some dispute about whether something was proper in the sentencing, you wouldn't ask the DOC to make its own determination as to whether, well, maybe it was just six years, but maybe the Department of Corrections thinks it should be ten years. That's not something that the DOC is set up to do, is authorized to do, or it would be desirable to have happen. I wanted to touch on the Matthews v. Eldridge balancing test, because what we're saying is you look at the entire procedure, and the most important thing is how much total assessment is made against the prisoner. And that is completely determined in the sentencing court. And then after that, it's just a matter of when and how much is deducted from the inmate account. And what our position is, if you apply Matthews to this entire procedure, starting off with the sentencing court, then you look and you say across the board, if we weigh the Matthews factors, is it worth having any additional pre-deprivation procedures? And it's our position that it is not worth that, and they have received sufficient pre-deprivation procedures, because they still have their post-deprivation procedures, they can file a grievance, and if in these two particular cases a mistake was made as to the exact amount that too much was deducted or something like that, they do have relief. But I think in the vast majority of these cases, you have inmates coming in with thousands of dollars in court costs and restitution, and so when the deduction process first starts, and if they have $30 in their account, the risk of erroneously taking too much money from the prisoner is incredibly negligible. Keeping in mind Judge Smith's class, the question that I think they're going to be discussing is your statement about the State having no constitutional obligation at all to permit inmates to have private accounts to which they have access while in the institution. That's your position. Well, that's outside this case. I'm saying it's quite arguable, but I don't know why they would necessarily be entitled to that. The prison provides them food, shelter, medical care, all the basic necessities of life, and in Tillman and these other cases, and in Buck, the court said, well, that's enough, and that's what these other due process cases were really trying to protect people who if they lost income, they wouldn't be able to pay rent, they wouldn't be able to buy food, and those factors almost don't exist in these cases or are so small that it's really not something which should weigh that much in the calculus. But since the State is the fount or the origin of all property rights, does not the State, by creating a system under which inmates are permitted to have accounts, create a due process interest and an expectation that the process will be? We have conceded that from the beginning, that they have a property interest in these inmate accounts, that the deprivation occurs when the money is taken out, and it's just our position that if you look at the procedures provided by the sentencing court, and then you look at the ministerial nature of the deductions, that if you had to make any type of judgment regarding the amount, that is something which is in the judicial realm, it would have to go back in front of the criminal court. The DOC has absolutely no authority to make those determinations. So when you get beyond them just applying a raw formula, you raise the issue which was left unaddressed in Buck regarding possible separation of powers issues, which that would not be an issue for this court but under Pennsylvania State law. No matter how it is, and this is outside the record, part of the problem here is the 12B6 procedural case, which doesn't make it very easy to get our arms around it. Can I just, Matthews v. Eldridge was decided on a motion to dismiss, and that is the, so if you're looking at broad proceedings. So was Higgins, Mr. Hopkirk, so was Higgins. I'm sorry. What is the method of communication between the administration and the inmate? I'm assuming no email, although maybe that's incorrect nowadays. Is it just a written message given to the inmate in his or her cell? How do they communicate? Your Honor, that is not in the record. I mean the inmates are given inmate handbooks routinely when, I mean as a general policy when they get to the prison. So they're given. Right, once they get there. But let's assume that the administration wants to tell inmate X that their account is about to be deducted next Tuesday. How does the administration tell inmate X that? I do not know exactly how that, the precise details work. Okay. Thank you very much, Mr. Reuben. We would ask the court to affirm. Thank you. Mr. Kleeney, you're reserved a few minutes. May it please the court. There are a few points from the appellee's argument that I'd like to address on rebuttal here. The first is that he mentioned the case of Tillman and Reynolds and he cited those in his brief as Third Circuit cases. I'd just like to point out for the court that those were all decided on summary judgment motions, as opposed to here where we're on appeal of a motion to dismiss. And, in fact, the Reynolds case involved very different facts, which involved the possibility of medical emergencies if there was a pre-deprivation hearing in that case. And that's the pretty typical case of extraordinary circumstances. The second point I'd like to follow up on is the references to the procedure being ministerial and the burden on the DOC. Those are all factual determinations that were made by the courts below on this 12B6 motion. And it was improper at this stage in the proceedings. That goes right to the heart of what you're asking. You're not asking that we fashion a better system. You want the case remanded for further proceedings. That's correct, Your Honor. At this point, as you all have noted, that there's very little record evidence here for the courts below to have gone on in making the determination as to the Matthews analysis. And, you know, the Matthews case obviously involved very different facts. That involved, if I recall, Social Security or this type of entitlement issue such as Social Security, whereas here we're talking about, obviously, about inmates in prison and their constitutional right to the property interest in their funds in their inmates' accounts. The last issue, Your Honor, that I just wanted to address briefly was that when the sentencing court issues its order as to the amount of restitution and the amount of costs and fines that the defendants have to pay, that's an in total determination. It's not a determination that you'll be able to pay this amount of money out of your inmate account every month. That's not the determination that the sentencing court's made. Unless you have any further questions, Your Honors, I would ask the Court to reverse their amendment. I haven't understood. Buck seems to suggest that it's the kind of determination perhaps they should make. I cannot imagine a sentencing court, especially in a larger area like Philadelphia, there's no time to do that. You're more concerned about the difference between the in and out decision or 10 years versus 15 years or should there be a tail.  No matter what we say, the judges are simply not going to do it. I think in Buck, the Pennsylvania Supreme Court tried to get them to do it. Based on what happened here, it's pretty clear they're not doing it. I think that's right, Your Honor. In this case, the plaintiffs have alleged that it did not occur here, that there was no mention of Act 84 or repayment other than the reference in the Montana sentencing to the plan of repayment upon parole. I just have one housekeeping question. With respect to the confusion about Mr. Hales, the amount owed, in his case, the conflicting figures, does Pennsylvania state procedure have anything analogous to, say, Rule 36 under the federal rules that permits clerical correction of a sentence? I would have to admit ignorance on that point, Your Honor. I'm just not familiar with the criminal procedures well enough in Pennsylvania to answer that. Thank you very much. Both of you will take the matter into advisement. Adjourned. Judge Smith, we could call you back in the chambers, but I know you're on a tight time schedule. We can take care of this tomorrow after the end of our other cases. I would like to. Could we take care of it tomorrow, Judge McKee? I would like to catch my plane because otherwise I will not be able to get to our group dinner tonight. Now, you might prefer that I not be able to get to our group dinner tonight, but if we can reserve it for tomorrow, that would be better. That's fine. Okay, great. Thank you very much.